# DONALD R. VICKER v. FRANK STARKEY, COMMISSIONER OF DEPARTMENT OF EMPLOYMENT SECURITY.

122 N. W. (2d) 169.

May 29, 1963—No. 38,921.

*Andrew P. Engebretson,* for relator.

*Walter F. Mondale,* Attorney General, and *Joseph A. Coduti,* Assistant Attorney General, for respondent.

MURPHY, JUSTICE.

This case is before us on certiorari to review a determination of the commissioner of the Department of Employment Security denying relator, Donald R. Vicker, unemployment compensation benefits. The narrow issue presented is whether the claimant is eligible for unemployment compensation benefits within the meaning of Minn. St. 268.08, subd. 1(1, 2), during a period when he failed to continue to report in person at an unemployment office and make continued claims for benefits in accordance with statute and regulation.

Prior to December 8, 1960, the claimant had been employed as a tractor and digger operator for Vicker and Sorenson, Inc., a sewer and waterline excavating company at Rochester, Minnesota. The claimant's brother was one of the owners of the company. On the latter date claimant was laid off because of lack of work. On December 12, 1960, he registered with the local employment service office of the Department of Employment Security at Rochester and filed a valid claim for unemployment benefits. He was instructed that to be eligible for benefits thereafter he was to report at the office weekly and file claims. He accordingly reported weekly and filed claims for the period ending January 29, 1961. During this period he received weekly payments of $38, which were charged against the amount of benefits to which he was entitled under law.

On January 29, 1961, claimant broke his right arm in an accident as a result of which he was confined to a hospital until February 4, following. His brother, and former employer, called at the office on January 31, 1961, for the claimant's weekly check. Delivery of the check was refused. It appears that 3 days later the brother again called at the office and told one of the employees that the employer would have no objection to the payment of benefits to the claimant. On February 7,

1961, while the claimant was still disabled because of the accident, he called the unemployment office by telephone and was informed that because of his broken arm he was not eligible for unemployment compensation benefits. It appears that the claimant made another telephone call within 14 days of his last reporting date and as he testified, "asked if I could make an appointment or something or file a new claim and they said, they rejected me right at the desk so I never came back." This appears to be the substance of the negotiations between the claimant and the local office until February 16, 1962. It further appears from the record that on May 24, 1961, the claimant took a job with the Woodrich Construction Company as an operator of a self-propelled roller. On February 16, 1962, the claims examiner of the Rochester office determined that relator was not entitled to compensation for the period between February 13, 1961, the date he claims he became available for work after his hospitalization, and May 24, 1961, the date he went to work for the Woodrich company. On appeal from this determination, an appeal tribunal of the Department of Employment Security also found relator ineligible for benefits during that period, and its decision was adopted and affirmed by the commissioner.

The record supports the findings of fact that the claimant failed to call personally at the unemployment security office to make a claim for further benefits and made no other contact with it after February 7, 1961.

The claimant's right to benefits is determined by statute and regulations adopted by the commissioner pursuant to the authority granted him by law.

Minn. St. 268.08, subd. 1, which relates to eligibility for unemployment compensation, so far as applicable here, provides:

"An individual shall be eligible to receive benefits with respect to any week of unemployment only if the commissioner finds that:

"(1)  He has registered for work at and thereafter has continued to report to an employment office, or agent of such office, in accordance with such regulations as the commissioner may prescribe * * *;

"(2)  He has made a claim for benefits in accordance with such regulations as the commissioner may prescribe."

It should be noted that the foregoing statute provides that the claim for benefits shall be made in accordance with such regulations as the commissioner prescribes. The commissioner has accordingly adopted and published Minnesota Regulations Relating to Department of Employment Security (1956 ed.). Regulation No. 8619(b) thereof provides that a recipient of benefits is required to "report in person" at a specified time and place.[1]

It appears from the facts in this case that there were circumstances which might have, in fairness, allowed payment of benefits even though the claimant did not report in person and file his weekly claims. The regulations, however, provide for contingencies where the claimant is prevented by extraordinary circumstances from reporting personally to file his claim for benefits. Where a claimant fails for good cause to report his eligibility and file his claim, an additional period of at least 35 days may be allowed for him to do so. Regulation No. 8619(b), pars. 3 and 4, prescribes what the claimant must do in case of late reporting. The provisions of the foregoing regulation are incorporated in the Local Office Claims Manual of the Department of Employment Security. The manual in part provides:

"1042 REPORTING REQUIREMENTS

"Claimants reporting in local offices shall be scheduled to make *weekly* reports in person. * * *

"A. LATE REPORTING

---

[1]Regulation No. 8619(b), so far as applicable here, provides:

"(b) Any individual, in order to establish his eligibility for benefits or waiting period credit for a week or weeks of unemployment * * * during a continuous period of unemployment, except as otherwise provided herein shall:

"Continue *to report in person* to the Minnesota Department of Employment Security at the place and time specified by the Department;

"File at such office a continued claim for waiting period credit or benefits on a form prescribed by the Department of Employment Security;

"Report any service performed and all remuneration payable for each week with respect to which he claims benefits or waiting period credit.

"1. Any individual residing in an area in which the Department maintains a full-time employment service office *shall report in person* at such office at the time specified and there file his continued claims for waiting period credit and benefits." (Italics supplied.)

"Regardless of the cause of late reporting a claimant shall be allowed a leeway period of 14 days following his designated reporting day in which to claim benefits for the period for which he would have reported on his reporting day plus any additional subsequent days up to such designated reporting day. Additional leeway is allowed for late reporting with 'Good Cause.'

\* \* \* \* \*

"1. GOOD CAUSE FOR LATE REPORTING

"If a claimant reports on any day later than the reporting day designated by the local office, the claims taker shall, by questioning as to the reasons for reporting late, determine whether or not the claimant had good cause. The determination of good cause shall be made if it is felt that it would have been unreasonable to expect the claimant to report on his designated day. Some examples of good cause would be illness, death in the immediate family, hospitalization, incarceration in jail, employment, seeking employment, bad weather, impassable roads.

\* \* \* \* \*

"b. Other Good Cause—Any individual, upon good cause being shown (except reemployment) for his failure to report his eligibility for benefits and to file his continued claim therefor at the local employment service office, or other place designated, at the time specified for so reporting and filing such continued claim, *may report* at such office and file such claim *or* file such claim *by mail,* if he is physically unable to report in person, *within 35 days following the date specified therefor.* In such case he shall be entitled to receive full waiting period credit or benefits for each week for which such claim is filed, if otherwise eligible. (This includes the entire period for which he was eligible up to the specified reporting day.)

"Any individual who is denied waiting period credit or benefits because of his failure to report in person to file his claim or to file such claim by mail within 35 days following the date specified therefor, may petition the Commissioner for the right to establish good cause for such failure to report because of extraordinary circumstances. The Commissioner may deny such petition or he may refer the matter to an appeal tribunal for a hearing and decision on the merits of the petition.

If the petition is allowed the petitioner shall be entitled to file a claim for and receive full waiting period credit or benefits for each week for which such claim is filed, if otherwise eligible." (Italics supplied.)

At the outset it should be noted that the claimant received a manual of instructions and was informed at the local office that to be eligible for benefits he was to report weekly in person and to file claims.[2] As we understand the contentions of the claimant, he claims to have been misled by information given to his brother and by information he received over the telephone. He claims, "The commissioner has proceeded on an erroneous theory of law and has acted arbitrarily, oppressively and unreasonably in denying the claim of claimant-relator, his determination not being supported by the evidence."

■ We said in Capra v. Carpenter Paper Co. 258 Minn. 456, 466, 104 N. W. (2d) 532, 539:

"* * * The statute is clear with respect to what must be done by the applicant for unemployment compensation—he must register for work, file a claim for benefits, be able to work, be available for work, be unemployed for a waiting period of 1 week during which he is otherwise eligible, and continue to report to the unemployment office each week."

■ It is well settled that the legislature has the power to delegate to an administrative agency the right to promulgate such reasonable rules and regulations as may be necessary to accomplish the purposes for which the agency is created. It is not contended by the claimant that the applicable regulations are unreasonable. It would appear from the statute and regulations that a prerequisite to receipt of unemployment compensation benefits is that the claimant continue to report regularly to the unemployment office each week so as to demonstrate his availability for work. The commissioner's requirement that the claimant report weekly in person is apparently considered to be basic in the administration of the Unemployment Compensation Act. The regulations and man-

---

[2] On December 12, 1960, the claimant signed a receipt which in part recites: "I have received a booklet entitled 'Information For Workers'. I have been informed that I must be unemployed, able to work, and available for work to be eligible for benefits * * *."

ual emphasize that the commissioner as a matter of policy has determined that the act cannot be properly administered by permitting claimants to make weekly reports by telephone calls, by agents, or, except in unusual circumstances, by letter. We agree that the regulations are reasonable and in accord with the policy of the act. Minn. St. 268.08, subd. 1(1, 2).

It is a well-established rule, moreover, that this court on certiorari cannot disturb the determination of the commissioner of the Department of Employment Security on the question of eligibility for unemployment compensation merely because the court does not agree with the determination, and can interfere only where he has exceeded jurisdiction, has proceeded upon an erroneous theory of law, or where his action is arbitrary, oppressive, and unreasonable, or without evidence to support it. Bucko v. J. F. Quest Foundry Co. 229 Minn. 131, 38 N. W. (2d) 223, 34 Minn. L. Rev. 271; Oliver Iron Min. Co. v. Commissioner of Taxation, 247 Minn. 6, 76 N. W. (2d) 107.

Although a reviewing court might reach a contrary conclusion to that arrived at by an administrative body, the court cannot substitute its judgment for that of the administrative body when the finding is properly supported by the evidence. Department of Employment Security v. Minnesota Drug Products, Inc. 258 Minn. 133, 104 N. W. (2d) 640. While it appears from the record that the claimant may have had a good excuse for not appearing in person to report and file his claim for continued benefits in February 1961, we can find no justification for his conduct in waiting a period of at least 1 year before further pressing his claim for benefits. We conclude that the findings of the commissioner are supported by the record.

Affirmed.